United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
SYSCAN, INC,                         No  C 03-2367 VRW

         Plaintiff,
                                     SUPPLEMENTAL
         v                           CLAIM CONSTRUCTION ORDER

PORTABLE PERIPHERAL CO, LTD,
et al,

         Defendants.
                                  /
```

The court hereby supplements the claim construction order of March 27, 2006, Doc #57 (the "original claim construction order"). This order (1) clarifies the basis of the court's construction of "interface module" (which appears in claim 1 of the '309 patent) and (2) adjudicates plaintiff's motion for reconsideration, Doc #58, which seeks construction of one claim phrase and one claim term that were not addressed in the original claim construction order because the parties had previously agreed upon the meaning of the relevant claim language. See Doc #61 (clarifying that plaintiff's motion for reconsideration is a

1 vehicle for further claim construction).  The hearing noticed for
2 June 29, 2006 is VACATED.

#### I
#### '309 Patent

**1    "interface module"**

The parties dispute whether the interface module can be contained within the scanner's main case.

The mobile scanner in claim 1 comprises an image sensing module, a motion mechanism and "an interface module coupling the image sensing module and the motion mechanism to a computing device and receiving a power supply and system control signals from the computing device."  '309 patent, col 10, ll 39-57.  Plaintiff contends that nothing in the claims suggests the interface module must reside outside of the scanner.  The court disagrees.

The specification clearly distinguishes the disclosed scanner from the prior art on the basis of the disclosed scanner's minimalist approach.  "The disclosed invention, for the first time, provides a mobile scanner that has <u>only</u> the minimum components to operate."  '309 patent, col 2, l 27 (emphasis added).  "Further, unlike many scanners in the market, there is not a single microcontroller in the disclosed scanner * * *."  Id, ll 29-31.  The "Summary of the Invention" section goes on to state that one feature of the "present invention" is "the scanner itself comprises <u>only</u> an image sensing module and a motion mechanism," which are "coupled to an interface engine that is typically received in a computing device."  Id, ll 36-38, 44-45 (emphasis added).

//

2

1    The specification later states that "fundamentally
2 different from the scanners in the market, there is no
3 microcontroller <u>and other electronic components</u> in main module to
4 control the operation of the image sensor and the illumination
5 source." Id, col 6, ll 63-67 (emphasis added).  Because this
6 statement appears in the "Detailed Description of the Preferred
7 Embodiments" section, it is unclear whether it refers to all
8 embodiments or a particular embodiment.  The specification does not
9 describe any embodiment where electronic components that control
10 the scanner are within the main case.  Although this consideration
11 is not dispositive, see <u>Phillips v AWH Corp</u>, 415 F3d 1303, 1323
12 (Fed Cir 2005) (warning against confining claims to particular
13 embodiments in the specification), it nonetheless tends to confirm
14 that by distinguishing prior art scanners in which the main case
15 housed more than the minimum components needed to operate, the
16 patentee did not contemplate embodiments of the '309 patent in
17 which the main case enclosed the interface module.

18    The court concludes that the patentee limited the scope
19 of the invention to scanners where the "scanner itself" contains
20 "only" the minimum components needed to operate, viz, a motion
21 mechanism and an image sensing module.  By "scanner itself," the
22 patentee meant the main module, depictions of which appear in the
23 diagrams of the invention.  The court finds that the patentee did
24 not intend the invention to encompass scanners where the main case
25 housed components in addition to the image sensing module and the
26 motion mechanism.

27    Aside from the location of the interface module,
28 plaintiff proposes that the term be construed to account for the

fact that the interface module "comprises a control circuit that receives system control signals from the computing device and generates logical control signals for the image sensing module and the motion mechanism to operate in synchronization." Accounting for these features in the construction of the term "interface module" would render limitations contained in claim 7 superfluous. Plaintiff further proposes that the construction of this term accounts for the fact that the interface module "draws a power supply from the computing device to energize the image sensing module and the motion mechanism to operate." Claim 1 already includes this limitation, suggesting the patentee did not contemplate that this feature was inherent in the term "interface module." See Phillips, 415 F3d at 1325 ("The inclusion of such a specific limitation on the term 'baffles' in claim 2 makes it likely that the patentee did not contemplate that the term 'baffles' already contained that limitation.").

The court construes "interface module" as "interface engine located outside of the main case that houses the image sensing module and motion mechanism."

2    "an interface module coupling * * * to a computing device and receiving * * * from the computing device"

The mobile scanner in claim 1 comprises an image sensing module, a motion mechanism and "an interface module coupling * * * to a computing device and receiving * * * from the computing device." '309 patent, col 10, ll 39-57. The parties initially agreed that the quoted phrase means "an interface engine received in an external computing device coupling * * * to a computing

**4**

1  device and receiving * * * from the computing device." Doc #36, Ex
2  1 at 2 (emphasis added). But plaintiff now rejects that
3  construction and contends that the phrase means "an interface
4  engine <u>connecting to</u> a computing device coupling * * * and
5  receiving * * * from the computing device." Doc #58-2 at 2
6  (emphasis original).

7  Plaintiff argues that the previously agreed upon
8  construction inappropriately limits the claim because the patent
9  does not require that the interface module be received in an
10 external computing device. The court agrees. The patent evidences
11 that the patentee contemplated embodiments where the interface
12 engine would not be implemented in a card that is received within
13 an external computing device. See '309 patent, col 2, ll 43-45
14 ("Both of the image sensing module and the motion mechanism are
15 coupled to an interface engine that is <u>typically</u> received in a
16 computing device." (emphasis added)). This is consistent with the
17 patentee's use of the distinct (albeit related) term "interface
18 card," which was construed in the original claim construction
19 order. Accordingly, the court agrees that the previously agreed
20 upon construction unduly limits claim 1. Plaintiff will not be
21 bound by that construction. But aside from the term "interface
22 module," which has already been construed, the court sees no reason
23 to construe the remainder of the phrase.
24 //
25 //
26 //
27 //
28 //

5

## II

### *'506 Patent*

**1   "main case"**

The parties dispute whether the scanner's main case necessarily contains the interface engine.

The mobile scanner disclosed by independent claim 13 comprises "a main case including an image sensing module and a motion mechanism," "an interface engine coupled to the image sensing module and the motion mechanism" and "a universal serial bus."  '506 patent, col 11, l 39 through col 12, l 11.

The parties originally agreed that "main case" means "a compact case that houses the image sensing module and the motion mechanism."  Doc #36, Ex 1 at 16.  Plaintiff now rejects that construction and contends that "main case" means "a compact case that houses the image sensing module, the motion mechanism <u>and the interface engine</u>."  Doc #58-2 at 2 (emphasis original).  Plaintiff argues that the previously agreed upon construction is inconsistent with dependent claim 14, which claims "the mobile scanner of claim 13, wherein the interface engine is enclosed in the main case and communicate[s] with the computing device through the universal serial bus."  '506 patent, col 12, ll 12-14.

It is true that "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." <u>Phillips</u>, 415 F3d at 1314; see also <u>Fonar Corp v Johnson & Johnson</u>, 821 F2d 627, 631 (Fed Cir 1987) ("[C]onstruction of disputed claims requires reference to the specification, the prosecution history, and the other claims.").  But in this context, plaintiff's argument proves too much.  The fact that claim 14 specifies that the main

6

1 case houses the interface engine actually militates <u>against</u>
2 implying such a spatial limitation into claim 13, for it suggests
3 that the patentee contemplated that the interface engine would not
4 necessarily be enclosed within the main case.  See <u>Phillips</u>, 415
5 F3d at 1325 ("The inclusion of such a specific limitation on the
6 term 'baffles' in claim 2 makes it likely that the patentee did not
7 contemplate that the term 'baffles' already contained that
8 limitation.").

9      This is confirmed by dependent claim 15, which specifies
10 that interface engine is housed in "a <u>separate case</u> integrated with
11 the universal serial bus."  '506 patent, col 12, ll 12-17 (emphasis
12 added).  The additional and mutually exclusive limitations of
13 claims 14 and 15 show that the location of the interface engine was
14 not a limitation inherent to the "main case" language of claim 13.
15 Hence, "main case" should not be construed so as to specify the
16 interface engine location.

17      Plaintiff lastly contends that its construction is
18 appropriate because this court found in the previous claim
19 construction order that the "interface engine is enclosed in the
20 main case."  Id at 2-3.  But the court merely observed that the
21 claim language of the '506 patent "makes clear that the interface
22 engine is contained within the main case <u>in some embodiments</u>."  Doc
23 #57 at 17 (emphasis added).  This observation is entirely
24 consistent with the conclusion that the interface engine may be
25 housed outside the main case, a possibility that should not be
26 foreclosed in the manner plaintiff proposes.

27      In sum, the court declines to construe "main case" so as
28 to import a limitation concerning the location of the interface

**7**

engine into claim 13.  Because (1) the location of the interface engine vis-a-vis the main case was the sole subject of dispute and (2) the parties agree that the main case is a compact case that houses the image sensing module and the motion mechanism, the court adopts the parties' previously agreed upon construction, which is amply supported by the claims and the specification.  See '506 patent, col 2, ll 13-14 (proclaiming that the disclosed scanner fulfills the need for a "compact, energy-efficient and lightweight" scanner); col 2, ll 57-61 ("The main case houses the image sensing module and the motion mechanism * * *."); col 5, ll 41-42 (same); col 11, ll 31-40 (same).

The court construes "main case" as "a compact case that houses the image sensing module and the motion mechanism."

### III

In sum, the court has clarified the basis for the construction of "interface module" and construed (or declined to construe) claim language that was the subject of plaintiff's motion for reconsideration.  Within two weeks of the filing of this supplemental claim construction order, the parties shall submit a proposed schedule for further proceedings.

SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge